UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FARKAS, M.D., LLC d/b/a<br>INTERVENTIONAL NEURO ASSOCIATES<br>and ALICEA SHERISE,<br><br>     Plaintiffs,<br><br>    -against-<br><br>CIGNA HEALTH AND LIFE INSURANCE<br>COMPANY, and PROGRAM<br>DEVELOPMENT SERVICES, INC.,<br><br>     Defendants. | **MEMORANDUM AND ORDER**<br><br>18-CV-05232 |

**Parties**                    **Appearances**

For Plaintiffs               Michael Gottlieb
                          Schwartz Sladkus Reich
                          Greenberg Atlas LLP
                          270 Madison Avenue
                          New York, NY 10016

For Defendant Cigna Health          E. Evans Wohlforth
and Life Insurance Company         Gibbons P.C.
                          One Gateway Center
                          Newark, NJ 07102

For Defendant Program Development     John E. Kiley
Services, Inc.                 Sheppard Mullin Richter
                          & Hampton LLP
                          30 Rockefeller Plaza
                          New York, NY 10112

Shira Forman
Sheppard Mullin Richter
& Hampton LLP
30 Rockefeller Plaza
New York, NY 10112

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**
I. Introduction ............................................................................................................. 2
II. Factual Background ............................................................................................... 3
III. Summary Judgment Standard ................................................................................ 6
IV. Law ........................................................................................................................ 6
   A. District Court's Review of Benefits Determination ........................................... 6
   B. Breach of Fiduciary Duty .................................................................................... 7
V. Application of Law ................................................................................................ 8
   A. ERISA § 502(a)(1)(B) Claim ............................................................................. 8
      i. Standard of Review ....................................................................................... 8
      ii. Abuse of Discretion ...................................................................................... 9
   B. ERISA § 502(a)(3) Claim ................................................................................. 13
VI. Conclusion ........................................................................................................... 14

**I.      Introduction**

This is an Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, *et seq.* ("ERISA") case. Plaintiffs Jeffrey Farkas, M.D., LLC, d/b/a Interventional Neuro Associates ("Farkas") and Alicea Sherise ("Patient" or "the patient") assert a cause of action against defendants Cigna Health and Life Insurance Company ("Cigna") and Program Development Services, Inc. ("PDS") for (1) recovery of benefits under ERISA Section 502(a)(1)(B), codified as 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty under ERISA Section 502(a)(3), codified as 29 U.S.C. § 1132(a)(3).

Plaintiffs seek $332,300 in billed charges for emergency brain surgery performed by Farkas, an out-of-network medical provider, on Patient after she suffered a stroke and multiple brain aneurysms. They allege that they should have been reimbursed fully—at the rate sought by the surgeon (Farkas)—for the emergency medical procedure under Patient's ERISA health benefits plan, for which her employer PDS served as plan administrator and Cigna served as claims administrator.

Defendants move for summary judgment. They contend, *inter alia*, that: (1) plaintiffs' claim for benefits should be dismissed because the failure to apply a provision in the insurance plan providing non-network doctors 100% reimbursement for "Emergency Room" services did not amount to an abuse of discretion; and (2) plaintiffs' fiduciary duty claim should be dismissed because it seeks the same monetary remedy sought in the claim for benefits.

Summary judgment is granted. Both claims are dismissed.

## II. Factual Background

Patient, 41, awoke on the morning of February 17, 2018 with severe migraine headaches, nausea, and vomiting. Am. Compl. Ex. A. She went to the emergency room at the NYU Langone Medical Center where a CT scan revealed ruptured blood vessels in her brain. *See id.*; Hr'g Tr. 7:25–9:8, June 4, 2019. She was diagnosed with multiple brain aneurysms and a subarachnoid hemorrhage, a life-threatening type of stroke, and rushed to the hospital's endovascular suite for surgery. *See* Am. Compl. Ex. A; Hr'g Tr. 8:4–9:8, June 4, 2019.

Emergency brain surgery was almost immediately conducted after diagnosis by neuroendovascular interventionist surgeons associated with Farkas. *See* Am. Compl. ¶¶ 8, 10; Hr'g Tr. 8:25–12:16. Farkas, who was not on a list of insured medical providers under the

patient's insurance plan, billed $332,300 for its emergency medical services. Am. Compl. ¶¶ 13–14.

The patient was the beneficiary of an employer-based health insurance plan governed by ERISA. *Id.* ¶ 11. Her employer, PDS, self-funded the plan and acted as plan administrator. *See id.* Cigna acted as claims administrator. *Id.*

Patient assigned her applicable health insurance rights and benefits under the ERISA plan to Farkas, who submitted Health Care Financing Administration ("HCFA") medical bills to Cigna seeking payment for the performed out-of-network treatment in the amount of $332,300.00. *See id.* ¶¶ 12–13. The HCFA claim form submitted by Farkas indicated that the "place of service" was "inpatient hospital services" and that the services were "emergency." *See id.* at Ex. C.

On June 13, 2018, Farkas received a document from an entity known as Multiplan, stating in part that "CIGNA has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." *Id.* ¶ 15. The Multiplan document proposed reimbursement in the amount of $12,407.00 for the emergency services rendered by Farkas. *Id.* ¶ 16. This offer was rejected, as was a second reimbursement proposal received on June 18, 2019 from an entity known as MARS, in the amount of $7,499.77. *Id.* ¶¶ 17–19.

On July 2, 2018, Cigna sent Farkas an explanation of payment along with a check in the amount of $6,893.20. *Id.* at Ex. E. The explanation of payment stated that the "covered amount" was $6,893.20 and included conditional language regarding its payment, stating: "acceptance of payment is full reimbursement less co-pay, coinsurance, or deductible." *Id.* ¶¶ 21, 23. Farkas never deposited the check. *Id.* ¶ 25.

Cigna's position was that its payment offer was based on a provision in the plan providing reimbursement for "inpatient" pre-stabilization services. *See*, *e.g.*, Cigna Reply Br. at 3, ECF No. 37, May 8, 2019; Hr'g Tr. 7:9–18, 8:8–14, 9:1–10:25, 11:25–12:6, June 12, 2019. Cigna also submitted that the $6,893.20 was three times what a person on Medicare would receive from Medicare. *See*, *e.g.*, Hr'g Tr. 8:20–25, 20:15–25, 22:3–10, June 12, 2019. The patient was too young to be on Medicare. But the explanation did, in part, suggest a lack of arbitrariness by defendants. *See infra* Section V(A)(ii).

Patient was sent an explanation by Cigna of benefits payable for her treatment by an out-of-network provider. Pls. Reply Br. Ex. E, ECF No. 36, May 1, 2019. It stated that Cigna paid Farkas $6,893.20 and that her financial responsibility towards her treatment was $0.00. *Id.* It also noted that Cigna "negotiates discounts with health care professionals and facilities to help you save money," in this case saving her $325,406.80. *Id.*

Farkas submitted an internal appeal to Cigna on July 19, 2018 regarding the benefits determination. Am. Compl. ¶ 30. It argued that Cigna was responsible for the full amount of $332,300 charged for the brain surgery because "[t]he plan specifically states that emergency treatment performed by a non-network provider is covered at 100%, including '*all services rendered as part of the visit*.'" *Id.* at Ex. G (emphasis added). It states that the services were billed at Farkas's "usual and customary rates." *Id.*

On September 10, 2018, Cigna sent Farkas a response denying the appeal. *Id.* ¶¶ 33–34. Cigna explained that it was affirming its original decision to apply the maximum reimbursable charge to the medical benefits claims. *Id.* at Ex. H.

Plaintiffs then commenced the instant action seeking full reimbursement for the performed treatment by Farkas. *Id.* ¶ 42.

5

**III.     Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**IV.     Law**

   **A.     District Court's Review of Benefits Determination**

Section 502(a)(1)(B) of ERISA provides that a "*civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan*, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

A district court reviews an administrator's decision to deny benefits under an abuse of discretion standard where the ERISA plan grants the plan administrator discretionary authority to determine eligibility for benefits. *Katsanis v. Blue Cross & Blue Shield Ass'n*, 803 F. Supp. 2d 256, 260 (W.D.N.Y. 2011); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-12, 115 (1989) (explaining that a denial of benefits challenged under § 1132(a)(1)(B) should be reviewed under an abuse of discretion standard when the ERISA plan terms expressly give the plan administrator discretion over benefits determinations); 128 A.L.R. Fed. 1, § 2a (noting that the Court in *Firestone* found that "a deferential standard of review, under principles of trust law, is appropriate when a trustee exercises discretionary authority").

Discretion is conferred if the plan contains "language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999).

Under an abuse of discretion standard, courts "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 106–07 (2d Cir. 2005) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). Because this is a "highly deferential standard of review, [courts] cannot substitute [their] judgment for that of the Plan Administrator and *will not overturn a decision to deny* or terminate *benefits unless* 'it was without reason, *unsupported by substantial evidence* or erroneous as a matter of law.'" *Id.* at 107 (quoting *Pagan*, 52 F.3d at 442) (emphasis added). "[T]he narrow scope of review under the arbitrary and capricious standard[, however,] does not shield the agency's decision from an in-depth, searching and careful consideration by [the district court] . . . or prevent reversal of such where there has been a clear error of judgment." *See Pension Ben. Guar. Corp. v. Potash*, No. CIV-79-130B(E), 1986 WL 3809, at *3 (W.D.N.Y. Mar. 26, 1986) (citations omitted).

"[J]udicial review is presumptively '*limited to the record* in front of the claims administrator *unless the district court finds good cause to consider additional evidence*.'" *Thomas v. Cigna Grp. Ins.*, No. 09CV5029SLTRML, 2013 WL 12084484, at *16 (E.D.N.Y. Jan. 10, 2013) (quoting *DeFelice v. Am. Int'l Life Assur. Co. of New York*, 112 F.3d 61, 67 (2d Cir. 1997) (emphasis added)). No proof of the market value of the services by Farkas on appeal or at any other time was submitted. This court is bound by that lack of proof by plaintiffs.

### B. Breach of Fiduciary Duty

ERISA Section 502(a)(3) provides for a cause of action by "a participant, beneficiary, or fiduciary . . . to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. §

7

1132(a)(3) (emphasis added). It is a "catchall" provision "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

"[S]uits may be brought under § 502(a)(3) only for 'those categories of relief that were *typically* available in equity.'" *LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, 361 F. Supp. 3d 348, 356 (E.D.N.Y. 2019) (emphasis in original) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, (1993)). "A claim for money due and owing under a contract is 'quintessentially an action at law.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Wal–Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)).

Equitable relief is unavailable under § 502(a)(3) "where the gravamen of the complaint is a claim for damages and other monetary relief owing under a contractual obligation." *Hall v. Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. 2010) (citation omitted). "[C]ourts should prevent plaintiffs from having two bites at the apple . . . and . . . 'we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief . . . .'" *Fitch v. Chase Manhattan Bank, N.A.*, 64 F. Supp. 2d 212, 229 (W.D.N.Y. 1999) (quoting *Varity*, 516 U.S. at 515); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) (declining "to perceive equitable clothing where the requested relief is nakedly contractual" with respect to plaintiff's claim for restitution under § 502(a)(3) of ERISA).

V. **Application of Law**

    A. **ERISA § 502(a)(1)(B) Claim**

        i. **Standard of Review**

Defendants' benefits determination is subject to abuse of discretion review. The patient's ERISA plan contains unambiguous language delegating the plan administrator discretionary authority to determine whether an employee's claim for benefits is valid. *See Thomas*, 2013 WL 12084484, at *14 (finding that language in a plan granting the plan administrator "sole and complete discretionary authority to interpret or construe ambiguous, unclear or implied terms in the Plan, . . . [to] determine eligibility of Employees to participate in the Plan and to receive Benefits" unambiguously provides the administrator discretion over benefits eligibility). The instant plan states:

> *For initial claim determination, the Plan Administrator has the discretionary authority to determine eligibility and to interpret the Plan*. For claim appeals, the Plan Administrator has designated Cigna Health and Life Insurance Company as the appeals fiduciary. *Cigna will have the discretionary authority to determine whether a claim should be paid or denied on appeal and according to the Plan provisions*.

Am. Compl. Ex. F, at 6 (emphasis added). The administrator's conclusion may not be overturned unless it was "arbitrary and capricious." *See Fuller*, 423 F.3d at 106.

### ii. Abuse of Discretion

The brain surgery performed by Farkas was undoubtedly emergent. This was an emergency procedure requiring immediate attention that could not be treated in a manner other than in a high-tech operating room by skilled brain surgeons. But, under the applicable highly deferential standard of review, defendants' decision not to pay 100% of the billed medical expenses cannot be considered an abuse of discretion. *See* Wright & Miller, § 2005 *Exclusiveness of Procedures*, 8 Fed. Prac. & Proc. Civ. § 2005 (3d ed.) ("As the Supreme Court has instructed, courts should defer to the decisions of ERISA Plan Administrators, determining the proper standard of review under the guidance of principles of trust law when the trust

arrangement grants the Plan Administrator discretion in allowing claims." (footnote and citation omitted)).

Plaintiffs argue that they should have been fully reimbursed under a provision in the plan's reimbursement schedule which states that "Emergency Room" services, "includ[ing] all services rendered as part of the visit," are paid at 100%. *See* Am. Compl. ¶ 28. The relevant provision is set out below:

**OPEN ACCESS PLUS MEDICAL BENEFITS SCHEDULE - Continued**

|  | NETWORK | NON-NETWORK |
|---|---|---|
| **Urgent Care Facility** (includes all services rendered as part of the visit) | 100% | Not Covered |
| **Emergency Room** (includes all services rendered as part of the visit) | 100% | 100% |

Maximum Reimbursable Charge limits do not apply to charges for covered Emergency Services provided in an emergency department of a Hospital that is not a network Hospital. If you receive covered Emergency Services provided in an emergency department of a Hospital that is not a network Hospital, and the provider bills you for an amount higher than the amount you owe indicated on the Explanation of Benefits (EOB), contact Member Services at the phone number on your ID card.

*Id.* at 11.

This provision, labeled "Emergency Room," can be reasonably interpreted as location specific. *See id.* It states that the "maximum reimbursable charge" limits—a payment schedule based upon a methodology similar to the methodology Medicare uses to determine the allowable fee for the same or similar service within the geographic market—do not apply to charges for emergency services performed in "*an emergency department*" of an out-of-network hospital. *See id.* at 11, 21. Only those medical services therefore delivered *in the emergency department* would receive 100% reimbursement under this provision.

10

The plan makes an explicit distinction between services provided in an "Emergency Room" and services provided in an "inpatient" hospital setting. *See id.* at 22. In its description of "Covered Expenses," the ERISA plan provides for both "Emergency Room" services and "inpatient hospital care immediately following an emergency room visit," the latter includes "medically necessary treatment immediately which is required to stabilize a member's condition." *Id.* The relevant language reads as follows:

> **Emergency Room**
>
> *Emergency Room*
>
> The Plan covers Emergency Services. Pretreatment authorization is not required prior to receiving Emergency Services. Medical Management must be contacted within 48 hours after care is provided.
>
> *Inpatient Hospital Care immediately following an Emergency Room Visit*
>
> Inpatient care for Emergency Services includes both Hospital and Doctor charges for initial medical screening examination as well as Medically Necessary treatment which is immediately required to Stabilize the Member's condition.

*Id.*

A description of how inpatient care prior to stabilization is reimbursed immediately follows. *See id.* As set out below, this provision provides for out-of-network inpatient pre-stabilization services to be paid according to *in-network coinsurance levels*.

> *Inpatient care before the Member's condition is Stabilized* - When care is provided in a non-network Hospital or by a non-network Doctor, charges for Inpatient care through Stabilization will be payable at the network Hospital coinsurance level and the network Doctor coinsurance level if the care is approved by Medical Management. When care is provided in an out-of-area Hospital, charges for inpatient care through Stabilization will be payable at the Network coinsurance level.

*Id.* "Co-insurance" is defined within as a percentage of the maximum reimbursable charge that a plan member is required to pay. *Id.* at 9.

11

While "it is well settled that ambiguities are to be construed in favor of the plan beneficiary," *Thomas*, 2013 WL 12084484, at *14 (E.D.N.Y. Jan. 10, 2013) (citation omitted); *see also Fay v. Oxford Health Plan*, 287 F.3d 96, 106 (2d Cir. 2002), based on the evidence and the law, and because of the deference granted to administrators, this court has no occasion to overturn the benefits determination made in this case. The administrator's conclusion not to characterize the surgery as "Emergency Room" services was based on a reasoned, rational interpretation of Patient's ERISA plan and consistent with its provisions relating to reimbursement for inpatient services following an emergency room visit and prior to stabilization. *See Blanck v. Consol. Edison Ret. Plan*, No. 02 CIV. 7718(LTS)(DC, 2004 WL 115199, at *8 (S.D.N.Y. Jan. 26, 2004).

Patient was initially treated in the emergency room of the hospital by triage employees of the hospital. *See* Hr'g Tr. 5:6–8, 6:7–14, 8:18–25, June 12, 2019. Later she was transferred to the endovascular room for surgery. As indicated in the claim form submitted by Farkas, the medical services, though emergent, were conducted in an "inpatient hospital setting." Am. Compl. Ex. C. When denying Farkas's internal appeal, Cigna explained that they applied the maximum reimbursable charge to plaintiffs' claim, offering payment of $6,893.20. *Id.* at Ex. H; *see also* Hr'g Tr. 8:20–25, June 12, 2019 (Cigna explaining that its offer was subject to the maximum reimbursable charge, a formula based on Medicare, and that the offer was three times what a person on Medicare would have received). This reimbursement proposal was, as already noted, based on the amount that would have been paid under a provision in the insurance plan allowing for reimbursement for inpatient pre-stabilization care. *See* Am. Compl. Ex. F, at 22; Hr'g Tr. 7:9–18, 8:8–14, 9:1–10:25, 11:25–12:6, June 12, 2019.

The administrator's benefits determination was neither arbitrary nor capricious. Evidence in the record supported a finding that the patient's emergency surgery was not subject to 100% reimbursement under the plan provision covering "Emergency Room" services. A ruling to the contrary would be be inappropriate in view of Congress having designed ERISA to avoid litigation and to provide swift and predictable resolutions of disputes. *See*, *e.g.*, Wright & Miller, § 2005 *Exclusiveness of Procedures*, 8 Fed. Prac. & Proc. Civ. § 2005 (3d ed.) ("[E]ven as to other matters—such as conflict of interest—the court confronting a discovery request must keep in mind that Congress intended that ERISA provide a method for expeditious and inexpensive resolution of disputes." (footnotes and citations omitted)); Wright & Miller, § 4516 *Areas of Competence for the Formulation of Federal Common Law—Filling the Interstices Within a Pervasive Federal Framework*, 19 Fed. Prac. & Proc. Juris. § 4516, n. 77 (3d ed.) ("The federal courts should fashion federal common law remedies sparingly, and should not resort to their lawmaking authority to create rights and remedies under ERISA when it would (1) conflict with statutory provisions of ERISA; (2) discourage employers from implementing ERISA plans; or (3) threaten to override explicit terms of some established ERISA benefit plan." (citations omitted)).

### B. ERISA § 502(a)(3) Claim

The claim for breach of fiduciary duty under ERISA § 502(a)(3) is dismissed. Plaintiffs impermissibly seek the same monetary remedy in the § 502(a)(3) claim as the § 502(a)(1)(B) claim. *See LI Neuroscience Specialists*, 361 F. Supp. 3d at 357. Though they "attempt[] to couch [the] § 502(a)(3) claim in equitable terms, plaintiff[s] do[] not seek equitable relief—but rather, the essence of the claim is one for damages for alleged underpayment." *Id.* at 356 (citing *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)).

Plaintiffs seek the balance of the unreimbursed medical expenses, relief that "falls comfortably within the scope of § 502(a)(1)(B)." *Frommert*, 433 F.3d at 270. "Because adequate relief is available under this provision, there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." *Id.*

## VI. Conclusion

The claims are dismissed. Plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claim fails. The administrator's benefits determination was neither unsupported by the evidence nor inconsistent with a reasonable interpretation of the ERISA plan provisions—it was not an arbitrary decision. Plaintiffs' 29 U.S.C. § 1132(a)(3) claim also fails. It seeks payment for the same unreimbursed medical expenses sought in the underpayment of benefits claim brought under § 1132(a)(1)(B).

The Clerk of the Court is directed to enter summary judgment in favor of defendants. Costs and disbursements to be filed by the magistrate judge and entered by the Clerk of the Court. Close the case.

Jack B. Weinstein
Senior United States District Judge

Dated: June 27, 2019
Brooklyn, New York